IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AARON T. JONES,

        Plaintiff,

vs.                                                               CIVIL NO.  05-644 JP/LFG

RICHARD F. PEREA, Sheriff
of Valencia County; WILLIAM
MARTINEZ, Undersheriff of
Valencia County; and LAURA
ALLEY, Lieutenant of the Valencia
County Sheriff's Department,

        Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR RULE 35 EXAMINATION
AND EXTENDING DEFENDANTS' EXPERT DEADLINE
AND OTHER RELATED CASE MANAGEMENT DEADLINES**

        THIS MATTER is before the Court on Defendants' Motion to Compel Plaintiff, Aaron T. Jones, to Submit to a Rule 35 Examination [Doc. 28].  Jones strenuously objects to the motion.

        The Court considered the motion, response, amended reply and surreply together with all exhibits submitted by the parties.  Oral argument on this motion is not necessary and the matter may be resolved based on the parties' submissions.

**Background**

        Jones was a deputy sheriff with the Valencia County Sheriff's Office where he worked as a detective and internal affairs investigator.  Jones was responsible for investigating a claim of excessive use of force by a fellow officer, Sgt. Simon Martinez.  Based on Jones' investigation, he believed that Sgt. Martinez's use of force was not justified and, further, that a criminal prosecution should ensue.  Jones prepared an internal affairs report to this effect.

Jones learned that the Sheriff, Richard Perea, together with Sgt. Martinez, were "covering up" Sgt. Martinez's wrongdoing, and Jones was directed by Sheriff Perea to modify his internal affairs report on Sgt. Martinez. Declining to do so, Jones was removed from internal affairs by Sheriff Perea and transferred to a patrol position. Thereafter, Jones "went over their heads" and reported Sgt. Martinez's alleged criminal conduct to the news media, the District Attorney's Office and the FBI.

Jones next alleges that he learned that a co-law enforcement officer, Lt. Laura Alley, "lied repeatedly" on her time sheets and, therefore, Jones reported the Lieutenant's alleged fraudulent time sheets to his supervisors. However, due to a "close personal relationship" between Sheriff Perea and Lt. Alley, nothing was done about the time sheet fraud and, as a result of Jones' report, the Sheriff, Sgt. Martinez, and Lt. Alley, all retaliated against him. Jones states that he was a "whistle blower" who spoke out on matters of public concern, and, as a result of his whistle blowing activities, Defendants retaliated against him. The retaliation included his reassignment from internal affairs to patrol, the issuance of unjustified written and oral reprimands, as well as the improper solicitation of citizen complaints. Jones further claims that Defendants attempted to have him fired from his after-hours private security job.

Defendants deny Jones' claims. They state that Jones was reassigned from internal affairs to an investigative position in the field services division due to department needs. Defendants argue that the transfer was at the same pay, seniority and benefits, and, thus, Jones experienced no "adverse job action" as defined by the law. Defendants contend that Jones was properly disciplined for misconduct and that referrals for investigation of citizen complaints were made when citizens, on their own, complained of Jones' misconduct. Defendants also deny any action interference with Jones' private employment relations.

**Present Motion**

As a result of initial disclosures under Fed. R. Civ. P. 26, Defendants learned that, over an extensive period of time, Jones secretly recorded numerous conversations he had with his co-employees, supervisors, county officials, other law enforcement officers, including FBI agents, and media representatives. Apart from the extensive number of surreptitiously taped conversations, Defendants argue that Jones' own statements appearing in the transcripts of the taped calls evidence paranoid thinking and behavior.

In their motion requesting a Rule 35 examination, Defendants contend that Jones' mental/emotional makeup is relevant for two specific reasons: (1) Jones' psychological makeup may affect his perception of events and leave him with the view that others are out to get him; (2) Jones' emotional, psychological makeup may significantly impact his claim for damages. This is so because Jones contends that his law enforcement career has been seriously damaged and that his promotability and potential for transfer have been severely hampered. (Response, Doc. 34, p. 3). Thus, evidence that a pre-existing mental or emotional condition exists and limits his opportunities for a career in law enforcement is relevant to Jones' damage claims.

Defendants retained Dr. Samuel Roll, a professor emeritus of psychology and psychiatry at the University of New Mexico, where he has taught for over 35 years. In addition to his professorship, Dr. Roll maintains a clinical psychiatry practice and is a diplomate in clinical forensic psychology. He has qualified as an expert witness in federal, state and tribal courts. (Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, pp. 1-2).

Dr. Roll reviewed the numerous transcripts of the taped conversations, Jones' answers to interrogatories, the pleadings, and the discovery obtained in this case. He also reviewed a videotape taken of a traffic stop involving Jones and a citizen. This citizen encounter ended with Jones drawing his weapon

and threatening the citizen when a comment was made about Jones' lack of professionalism.  Dr. Roll testifies:

> First, the sheer number of surreptitious recordings made by Deputy Jones and their content are indicative of potential psychological pathology.  In reviewing the content of the recordings, I note that Deputy Jones has a tendency to make gratuitous confrontational approaches toward others.  He also has a readiness to accept slight and a tendency toward easy slight.  He also displays a susceptibility toward insult, and then poor impulse control in response.

(Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 2, ¶ 9).

Dr. Roll further states:

> I also note from the surreptitious recordings that Deputy Jones has a tendency toward over incorporation.  In laymen's terms, this is someone who overreaches the available data in a grandiose or obsessive way.  An example of this is his constant unsolicited references to the possibility that the news media will be arriving in Valencia County to investigate matters that he believes have significance.

(Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 3, ¶ 10).

In reference to the video recording of an encounter between Deputy Jones and a citizen arising from a routine traffic stop, Dr. Roll comments:

> I have also reviewed a videotape of Deputy Jones' stop of a motorist while in plain clothes in an unmarked squad car.  During the videotape, Deputy Jones makes reference to stopping the motorist for speeding and that he at one point had unholstered his firearm and pointed it at the motorist during the encounter to gain his attention.  The motorist, at another point in the encounter, comments upon Deputy Jones' professionalism, at which point, Deputy Jones replies in a perturbed manner that he is now placing the motorist under arrest.

(Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 2, ¶ 7).

Dr. Roll refers to this conduct as "poor impulse control," (id.) and also notes that Jones has had ongoing difficulties in his present employment with co-employees and supervisors, as well as difficulties in prior positions he has held.  Dr. Roll opines:

4

> The materials I have reviewed to date are suggestive of psychological pathology of someone who suffers from a personality disorder or a more serious psychiatric deficit. Either pathology would bear on Deputy Jones' emotional injury claim in this lawsuit, as well as his fitness to be a law enforcement officer.

(Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 3, ¶ 12).

Dr. Roll made a preliminary evaluation of Jones, based on all of the information he considered, but candidly states:

> I cannot diagnose someone without conducting a psychological evaluation. Therefore, I would need to conduct a comprehensive evaluation, including a battery of psychological tests and interviews, in order to arrive at any opinions about Deputy Jones to a reasonable degree of professional certainty.

(Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 3, ¶ 12).

### **Plaintiff's Opposition**

Jones argues that he has not placed his mental or emotional condition at issue, and contends that he asserted nothing more than "garden variety" claims for emotional damages. With only "garden variety" claims before the Court, a Rule 35 examination would be inappropriate. Thiessen v. General Electric Capital Corp., 178 F.R.D. 568, 570 (D. Kan. 1998).

Jones also argues that he had legitimate reasons to tape conversations, primarily because he was concerned about supervisors retaliating against him. Indeed, he was previously involved in litigation with another law enforcement agency where he claimed retaliation and won a substantial settlement after filing suit. He states that the tape recordings were made "in investigating criminal and internal affairs matters within the Valencia County Sheriff's Department." (Response, Doc. 34, p. 5). Thus, there is nothing "paranoid" in Jones' conduct, but, rather, the recordings are indicative of the thoroughness in which Jones performed his job as an internal affairs detective.

Finally, to the extent Defendants argue that Jones' emotional or psychological makeup may affect his career in law enforcement, Jones asserts that before he was hired by Valencia County, Defendants conducted pre-hiring inquiries, hired him, promoted him and assigned him to internal affairs. He was viewed as "a world class detective" and was being groomed to attend the FBI Academy. "There was no question concerning his psychological competency to be a police officer until he carried out his duties as an internal affairs detective too effectively." (Response, Doc. 34, p. 4). Jones contends that the claims that he is paranoid or that his alleged mental or emotional condition adversely affects his law enforcement career are specious.

In sum, Jones rests his opposition on the contention that he did not place his mental/emotional condition at issue and that Defendants did not demonstrate good cause sufficient to justify the evaluation. Therefore, he opposes any examination under Rule 35(a).

## Analysis

In any discovery dispute, the Court must consider whether the proposed discovery is relevant under Fed. R. Civ. P. 26(b)(1). Rule 26 generally provides for a broad scope of discovery. Under this Rule, parties may obtain discovery regarding any matter "not privileged, that is relevant to the claim or defense of any party . . . ." Relevant discovery is defined as information that "appears reasonably calculated to lead to the discovery of admissible evidence." Id. The broad discovery principle underlying the rule is intended to allow the parties to learn as much as they can about each other's claims and defenses prior to trial so as to better evaluate a case for settlement or, alternatively, to be prepared to meet the proofs at the time of trial. *See* Smith v. Ford Motor Co., 626 F.2d 784, 794 (10th Cir. 1980), *cert. denied* 450 U.S. 918, 101 S. Ct. 1363 (1981).

While there is liberal discovery under Rule 26, the Court is also vested with broad discretion to tailor discovery as needed. Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 1597 (1998). The

court may deny the discovery request altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which the material will be disclosed. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied* 531 U.S. 926 (2000); Burka v. U.S. Dept. of Health and Human Services, 87 F.3d 508, 517 (D.C. Cir. 1996). Thus, a court can deny the discovery altogether even where the information is relevant under Rule 26, if the benefit of discovery is outweighed by the plaintiff's privacy rights or the intrusiveness of the exam. This Court must therefore carefully balance Jones' right of privacy with Defendants' need for information to defend themselves in this lawsuit. With these concepts in mind, the Court turns its attention to Rule 35.

## Fed. R. Civ. P. 35

Whenever the physical or mental condition of a party is in controversy, the Court may require the party to submit to a physical or mental examination. Fed. R. Civ. P. 35; Schlagenhauf v. Holder, 379 U.S. 104, 111, 85 S. Ct. 234, 238 (1964). Unlike other formal discovery devices which can automatically be utilized by a party under the federal rules, a request under Rule 35 requires court authorization and is given only in instances where a party's physical or emotional condition is at issue, and the requesting party is able to demonstrate good cause. Id. The reason for imposing strict requirements stems from the Court's recognition of a person's right of privacy.

> No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251-52, 11 S. Ct. 1000, 1001 (1891).

There can be no dispute that a psychological examination is intrusive. Indeed, it is among the most invasive kinds of examinations possible. Defendants seek, through a battery of tests and in-depth interviews, to peer into the recesses of Jones' subconscious, to rummage through the closet of his psyche,

and to search under the bed of his most private thoughts and feelings for evidence to challenge his claims.

Due to the type of significant intrusion that a Rule 35 exam entails, the Court will not authorize such an evaluation until it is fully satisfied that Jones' mental and emotional condition is at issue and that Defendants have shown good cause for the request. Schlagenhauf, 379 U.S. at 111; Wright & Miller Federal Practice and Procedure, § 2231, p. 466.

### A. Mental Condition At Issue

In this case, Jones correctly argues that he has not put his own mental, emotional or physical condition at issue. Indeed, the factors that the Court normally considers in determining whether to allow a Rule 35(a) examination are not present in this case. Those factors are outlined in Fox v. Gates Corp., 179 F.R.D. 303, 307 (D. Colo. 1998). There, the court recognized that a mental exam is warranted when one or more of the following factors is present:

> (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35.

Here, Jones did not assert and, indeed, under the New Mexico Tort Claims Act, could not assert a tort claim for intentional or negligent infliction of emotional distress. He made no allegation of any specific or diagnosable mental or psychiatric injury or disorder proximately caused by Defendants' conduct. At the Rule 16 scheduling conference, Plaintiff's counsel vigorously asserted that Jones was only seeking "garden variety" damages and was not asserting emotional injury that would trigger the need for a Rule 35 evaluation.[1] Jones has not sought treatment for any emotional injury nor is he offering any expert

---

[1] "Garden variety" damages refer to emotional distress claims which amount to no more than an attempt to recover for the "generalized insult, hurt feelings and lingering resentment." Thiessen, 178 F.R.D. at 570.

8

testimony in support of a claim for emotional distress damages. Finally, Jones does not contend that his mental condition is at issue. Thus, the <u>Fox v. Gates</u> factors normally considered by the Court are not present in this case, and the absence of the <u>Fox v. Gates</u> factors weighs against Defendants' request.

However, Jones is not the only party who can place his condition at issue. In their treatise, <u>Federal Practice & Procedure</u>, Wright & Miller note:

> The matter is different when the person or party whose examination is sought has not put his or her own condition in issue, and it is other parties who raise the issue. In this situation, a discriminating application must be made by the trial judge of the "in controversy" and "good cause" requirements.
>
> This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other unusual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the rule.

<u>Federal Practice & Procedure</u>, 2234.1, p. 480.

That is the situation presently before the Court. Although Jones did not place his mental condition at issue, Defendants attempt to do so. Wright and Miller notes that any party can raise and put the opposing party's mental/emotional condition at issue. <u>Id.</u> And, in accord with Wright and Miller's advice, Defendants provided "sufficient information" via their expert witness' affidavit showing more than mere speculation, guess or conjecture. Defendant's expert, Dr. Roll, raises the inference that Jones has traits consistent with a psychological pathology. This alleged pre-existing pathology affects the way Jones views situations, including a readiness and tendency toward "slight," in effect a hypersensitivity and over-reaction to normal interpersonal relations and normal situations. Dr. Roll opined that Jones displays "over

incorporation" which has been described as a tendency to overreach available data in a grandiose or obsessive way. (Declaration of Samuel Roll, Ph.D., Doc. 28, Ex. 14, p. 3, ¶ 10).

This is not a mere fishing expedition nor a wholly unsupported request. If that were the case, Defendants' request would be summarily rejected. Here, there is more for the Court to consider. The conditions described by Dr. Roll's preliminary evaluation could well impact Jones' perception of events and, indeed, his trial testimony. There is at least enough information presented by Dr. Roll and, consequently, now before the Court, to raise a significant question concerning Jones' mental or emotional condition. Therefore, while Jones has not placed his own condition at issue, the rule is clear-- the condition can be placed at issue by any person, plaintiff or defendant. Defendants' evidence places the condition squarely in controversy, *albeit* presenting a close question.

### B. Good Cause For Examination

Defendants still must demonstrate good cause for the examination to satisfy the requirements of Rule 35. Moreover, because of the sensitive nature of mental examinations and their potential for abuse, the "good cause" requirement of Rule 35 is not a mere formality. *See* Schlagenhauf, 379 U.S. at 118. "The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)." Id. Thus, the good cause language in Rule 35 indicates that there must be greater showing of need under Rule 35 than under other discovery rules. Id. at 118.

This Court recognizes that a court-ordered mental examination "arguably presents defendants and fact-finders with a powerful tool for ferreting out false or frivolous claims, or at least for rebutting claims of compensable mental anguish. "Headshrinkers, Manmunchers, Moneygrubbers, Nuts & Sluts: Reexamining Compelled Mental Examinations in Sexual Harassment Actions Under the Civil Rights Act of 1991," 80 Cornell Law Review, 1268, 1271, 1272 (1995). However, as noted in this extensive article

on court-ordered examinations in sexual harassment cases, "This tool can be a distressingly blunt weapon. Compelled mental examinations may best serve defendants not by illuminating facts at issue in a case, but by intimidating potential sexual harassment plaintiffs into silence." Id.

Notwithstanding the potential abuses of Rule 35 exams, Defendants' arguments that examination should be ordered because Jones is "hypersensitive," demonstrates a "readiness to accept slight," and "susceptibility toward insult," and "then poor impulse control," find support among some psychiatric professionals. In "The Role of Forensic Psychiatry in the Defense of Sexual Harassment Cases," Sarah P. Feldman-Schorrig and James J. McDonald, Jr., 20 J. Psychiatry & Law, 5, 7-8 (1992), the authors urge that Rule 35 examination can be used to determine if a plaintiff is hypersensitive or otherwise prone toward exaggeration, or is mis-perceiving innocuous behavior and ascribing an evil motive to routine situations. In other words, Feldman-Schorrig and McDonald support the use of a Rule 35 examination for virtually the same purposes urged by Defendants in the present case. However, these commentators also acknowledge "a major purpose for the mental examination is to assess the plaintiff's credibility." 80 Corn. L. Rev. at 1317, *citing* Feldman-Schorrig and McDonald, 20 J. Psychiatry & Law at 23-26.

Essentially, that is what Defendants' request seeks, i.e., an assessment of Plaintiff's credibility by a medical expert. Defendants hope to present evidence to convince the fact finder that it should not believe Jones because he is paranoid; that what he says occurred is a product of his delusional thinking and does not comport with reality; and that his psychological condition causes him to believe things occurred that did not actually occur. Thus, without so stating, Defendants seek a Rule 35 examination so as to challenge Jones' credibility. Other courts, however, have rejected requests for Rule 35 examinations when the requester's need for the exam is couched in terms of testing the opponent's credibility. *See, e.g.*, Tyler v. District Court, 193 Colo. 31, 561 P.2d 1260, 1263 (Colo. 1977) (court rejected request for a Rule 35 examination based on claim that a party's mental condition might bear on the party's credibility); United

11

States v. Fountain, 840 F.2d 509, 517 (7th Cir.)("court was entitled to be leery of . . . psychiatric examination of witnesses and psychiatric testimony about witnesses, because the jury can observe for itself. . . ."), *cert. denied*, 488 U.S. 982 (1988); United States v. Barnard, 490 F.2d 907, 912 (7th Cir. 1973) (questioning whether expert testimony on a party's credibility is appropriate, and noting "the jury is the lie detector in the courtroom"), *cert. denied*, 416 U.S. 959 (1974); United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988) (expert may not opine as to a witness' credibility). *But see* Hodges v. Keane, 145 F.R.D. 332 (S.D.N.Y. 1993) (permitting Rule 35 mental examination of the plaintiff to show possibility that a mental condition impaired the plaintiff's ability to perceive and evaluate the actions of others, under circumstances where there were 12 years of mental health records describing the plaintiff's personality as anti-social, paranoid schizophrenic, and delusional).

    As earlier indicated, even when the information sought is relevant under Rule 26, as it is here, the Court is compelled to carefully balance the needs of the parties. Even without the Rule 35 examination, there is nothing to preclude Defendants from presenting admissible evidence of Jones' conduct, statements and behavior. Nor are Defendants prevented from arguing that Jones' perception is not reality or that he mis-perceived or misunderstood otherwise innocuous conduct. There is nothing to prevent Defendants from arguing to the jury that Jones shouldn't be believed. Thus, although Defendants want expert testimony to bolster their defense, they do not need it and therefore, failure to provide a sufficient showing of good cause for the exam.

    In so finding, the Court considers the serious and invasive nature of the examination and Jones' privacy rights. This would not be an issue if Jones intentionally or unintentionally put his own condition at issue. In such an event, Jones could not convincingly complain about being subjected to an intrusive examination because that is part of the price a litigant pays for seeking significant emotional harm damages. But, that is not the case here. Jones gave up what might otherwise be viewed as substantial

12

emotional damage claims, opting instead to assert only the minor "garden variety" type. He gave up his right to rely on expert testimony to buttress his claims. His attorney argues those were conscious, tactical decisions intended to avoid application of the Fox v. Gates factors and thereby avoid placement of his condition at issue. If the Court were to order the examination, Jones would suffer all of the harm attendant to the intrusiveness of a Rule 35 exam without obtaining any of the benefits that would follow from putting his condition at issue.

Finally, the Court is concerned about the precedential value of granting a request for a Rule 35 examination under the circumstances of this case. As noted in the Cornell Law Review article, a Rule 35 exam can be used as a blunt weapon. It would not serve the interests of justice to compel every plaintiff whose credibility is at issue--and it is always at issue--to suffer the intrusiveness of a psychological examination. That would have a chilling effect on all plaintiffs. The very fact of filing a lawsuit could subject them to an invasive psychological examination. This would be unfair. It would place obstacles and stumbling blocks in the path of a litigant's right of access to the court. Requests for mental exams should not be denied as a matter of course, nor should they be granted as a matter of course. Rather, in each instance, a court should carefully consider and balance the competing interests and needs of the parties, as the Court did here.

## Conclusion

In weighing the benefits and detriments of the request, and in considering the appropriate balance to strike, the Court finds that Jones' right of privacy, under the facts of this case, outweighs Defendants' need for a Rule 35 examination. The Court, therefore, concludes that the "good cause" requirement under Rule 35 and Schlagenhauf has not been satisfied and accordingly DENIES Defendants' request for a Rule 35 examination [Doc. 28] of Plaintiff.

**Case Management Deadlines**

The Court's delay in ruling on this motion has contributed to the parties' inability to complete their discovery in accord with the earlier-set case management deadlines. Accordingly, the Court grants Defendants' motion to extend expert disclosure deadline [Doc. 27], and further extends all case management deadlines as follows:

| | |
|---|---|
| Termination for discovery | April 5, 2006 |
| Motions relating to discovery filed by | April 22, 2006 |
| Defendants shall identify in writing any expert witness & submit Rule 26 report by | March 8, 2006 |
| Pretrial motions, other than discovery motions, shall be filed with the Court no later than | April 28, 2006 |
| Pretrial Order:  Plaintiff's portion to Defendants  Defendants to the Court on or before | June 14, 2006  June 28, 2006 |

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge