IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AARON T. JONES,

          Plaintiff,

vs.                                            CIVIL NO. 05-644 JP/LFG

RICHARD F. PEREA, Sheriff
of Valencia County; WILLIAM
MARTINEZ, Undersheriff of
Valencia County; and LAURA
ALLEY, Lieutenant of the Valencia
County Sheriff's Department,

          Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' RENEWED MOTION
## TO CONDUCT RULE 35 EXAMINATION

### Introduction

THIS MATTER is before the Court on Defendants' Richard F. Perea, William Martinez and Laura Alley Renewed Motion to Compel Plaintiff Aaron T. Jones, to Submit to a Rule 35 Examination Based on Newly Discovered Evidence, filed April 5, 2006. [Doc. No. 62.] The motion is fully briefed and ready for resolution. [Doc. Nos. 68, 71.] After carefully reviewing the pertinent law, pleadings and attachments, the Court determines the renewed motion should be granted for the reasons set out below.

### Factual Summary

In September 2002, Jones was hired by the Valencia County Sheriff's Department. [Second Amended Complaint.] Jones alleges that in April 2003, he was appointed as the Internal Affairs Investigator for the Valencia County Sheriff's Department. [Id.] In November 2003, Jones contends

1

he was promoted to detective. [Id.] In June 2004, Jones was responsible for investigating a claim of excessive use of force by a fellow officer, Sgt. Simon Martinez. Jones believes that during his investigation, he uncovered criminal conduct in the department. Thus, he became a "whistle blower" who spoke out to the news media, the District Attorney's Office and the FBI regarding the results of his investigation. Jones claims *inter alia* Defendants reprimanded him without justification and that they retaliated against him by reassigning him from internal affairs to patrol.

Defendants deny Jones' claims. They contend that Jones was properly disciplined for misconduct and that he was reassigned from internal affairs to an investigative position due to department needs. In addition, Defendants assert that Jones did not suffer an "adverse job action" as defined by law. Further, Defendants claim that Jones is a paranoid individual whose condition skews his perception of events and colors his perception of reality. Defendants also contend that Jones' personality disorder or more serious psychological problems significantly impact his damage claims because they affect his ability to perform as a law enforcement officer.

Jones alleges that Defendants' conduct has seriously damaged his law enforcement career, promotions and transfers. Defendants, on the other hand, argue that if Jones does, indeed, suffer from mental or emotional problems that predate the claims he is making, then his future in law enforcement is already compromised as are his damage claims.

Defendants retained Dr. Samuel Roll, a professor emeritus of psychology and psychiatry at the University of New Mexico, where he has taught for over 35 years. In addition to his professorship, he maintains a clinical psychiatry practice and is a diplomate in clinical forensic

psychology. He has qualified as an expert witness in federal, state and tribal courts. [Doc. No. 28, Ex. 14, Declaration of Samuel Roll, Ph.D., pp. 1-2).[1]

Dr. Roll reviewed the numerous transcripts of the taped conversations, reviewed Jones' answers to interrogatories, the pleadings, and the discovery obtained in this case. He also reviewed a videotape taken of a traffic stop involving Jones and a citizen. This citizen encounter ended with Jones drawing his weapon and threatening the citizen when a comment was made about Jones' lack of professionalism. Dr. Roll testifies:

> First, the sheer number of surreptitious recordings made by Deputy Jones and their content are indicative of potential psychological pathology. In reviewing the content of the recordings, I note that Deputy Jones has a tendency to make gratuitous confrontational approaches toward others. He also has a readiness to accept slight and a tendency toward easy slight. He also displays a susceptibility toward insult, and then poor impulse control in response.

[Roll Declaration, p. 2, ¶ 9].

Dr. Roll further states:

> I also note from the surreptitious recordings that Deputy Jones has a tendency toward over incorporation. In laymen's terms, this is someone who overreaches the available data in a grandiose or obsessive way. An example of this is his constant unsolicited references to the possibility that the news media will be arriving in Valencia County to investigate matters that he believes have significance.

[Roll Decl., p. 3, ¶ 10].

In reference to the video recording of an encounter between Deputy Jones and a citizen arising from a routine traffic stop, Dr. Roll comments:

---

[1] In resolving this matter, the Court examines both the renewed motion, attachments and related pleadings, along with Defendants' initial motion, attachments (including Dr. Roll's declaration), and related pleadings.

> I have also reviewed a videotape of Deputy Jones' stop of a motorist while in plain clothes in an unmarked squad car. During the videotape, Deputy Jones makes reference to stopping the motorist for speeding and that he at one point had unholstered his firearm and pointed it at the motorist during the encounter to gain his attention. The motorist, at another point in the encounter, comments upon Deputy Jones' professionalism, at which point, Deputy Jones replies in a perturbed manner that he is now placing the motorist under arrest.

[Roll Declaration, p. 2, ¶ 7].

Dr. Roll refers to this conduct as "poor impulse control," (id.) and also notes that Jones has had ongoing difficulties in his present employment with co-employees and supervisors, as well as difficulties in prior positions he has held. Dr. Roll opines:

> The materials I have reviewed to date are suggestive of psychological pathology of someone who suffers from a personality disorder or a more serious psychiatric deficit. Either pathology would bear on Deputy Jones' emotional injury claim in this lawsuit, as well as his fitness to be a law enforcement officer.

[Roll Declaration, p. 3, ¶ 12].

In their initial motion requesting a Rule 35 examination, Defendants argued that Jones' mental/emotional makeup is relevant for two specific reasons: (1) Jones' psychological makeup may affect his perception of events and leave him with the view that others are out to get him; (2) Jones' emotional, psychological makeup may significantly impact his claim for damages. This is so because Jones contends that his law enforcement career has been seriously damaged and that his promotability and potential for transfer have been severely hampered. [Doc. No. 34, p. 3.] Thus, evidence that a pre-existing mental or emotional condition would limit his opportunities for a career in law enforcement is relevant to Jones' damage claims.

Dr. Roll made a preliminary evaluation of Jones, based on all of the information he considered, but candidly states:

> I cannot diagnose someone without conducting a psychological evaluation. Therefore, I would need to conduct a comprehensive evaluation, including a battery of psychological tests and interviews, in order to arrive at any opinions about Deputy Jones to a reasonable degree of professional certainty.

[Roll Declaration, p. 3, ¶ 12].

### **Procedural Background**

On December 14, 2005, Defendants filed an earlier motion to compel Plaintiff Jones ("Jones") to submit to a Rule 35 examination. [Doc. No. 28.] In an opinion issued February 16, 2006, the Court denied the request [Doc. No. 53], having found that Jones' right of privacy, under the facts of this case (as presented in the earlier briefing) outweighed Defendants' need for a Rule 35 examination. [Doc. No. 53, p. 13.] The Court concluded, therefore, that the "good cause" requirement set forth in Fed. R. Civ. P. 35 and <u>Schlagenhauf v. Holder</u>, 379 U. 104, 111 (1964) had not been satisfied.

In denying the first request for a Rule 35 examination of Jones, the Court observed that Jones had not placed his own mental, emotional or physical condition at issue. Of significance, Jones had not seen a health care provider for mental health issues and had not been treated for any mental or emotional issues. Jones did not assert a tort claim for intentional or negligent infliction of emotional distress, nor could he do so under the New Mexico Tort Claims Act. He made no allegation of a specific or diagnosable mental or psychiatric injury or disorder proximately caused by Defendants' conduct. At the Rule 16 scheduling conference, Jones' attorney asserted that Jones sought only "garden variety" damages and was not claiming the type of emotional injury that would trigger the

5

need for a Rule 35 evaluation. Jones alleged that he had not sought any treatment for an emotional injury and was not offering an expert in support of a claim for emotional distress damages. *See* Fox v. Gates Corp., 179 F.R.D. 303, 307 (D. Colo. 1998) (setting forth factors to be examined in deciding whether to order a Rule 35 exam).

The Court concluded that the evidence presented by Defendants placed Jones' condition in controversy, even though it was a close question. Thus, the Court proceeded to analyze whether there was good cause for the examination, concluding that there was not, especially where it appeared that Defendants sought a Rule 35 exam to assess Jones' credibility, which was more properly the role of the fact finder. [Doc. No. 53.]

### **Defendants' Renewed Motion for Rule 35 Exam**

After Jones' January 27, 2006 deposition and supplemental discovery supplied by Jones on March 10, 2006, Defendants renew their motion to compel the Rule 35 examination. The motion is based, in part, on subsequent deposition testimony indicating that Jones was less than candid in describing his prior mental health treatment. The Court understood Jones to have been seen only one time by a mental health expert for an unrelated and mandatory visit.

In response to the first motion to compel Rule 35 examination, Jones' attorneys argued that Jones "had never seen a medical health expert as he indicated in answers to interrogatories (Exhibit 14C to Plaintiff's (sic) Motion, Answer to Interrogatory No. 2) . . . ." [Doc. No. 34, p. 3.] Interrogatory No. 2 specifically asked Jones "[h]ave you ever [sic] treated with [sic] any psychiatrist, psychologist or mental health counselor during your lifetime?" Jones provided the following answer:

> In July of 1999 I was involved in an Officer Involved Shooting while employed with the Lea County Sheriff Office.[2]  I was required to attend mandatory counseling with Dr. Will Parsons, the departments [sic] designated psychologist prior to returning to duty.  There never was any medication prescribed.  I was returned to duty after one visit with Dr. Parsons.

[Doc. No. 71, Ex. F.]

In Jones' January 27 deposition,[3] Jones' testimony was quite different.  He testified that in response to an interrogatory[4] inquiring about Jones' previous mental health care or treatment, he listed three different doctors he had seen for mental health issues.  He further testified that he had seen Dr. Parsons on multiple occasions and that Dr. Parsons was the one who initially performed Jones' evaluation of his pre-psychological evaluation (sic?) before Jones went to work for Lea County.  [Doc. No. 62, Ex. A, Jones' Dep. at p. 11.]  Jones stated that he had first seen Dr. Parsons in April 1995 and then again in the summer of 1999 after he was involved in an officer-involved shooting.  Jones believed this counseling session was mandatory.  After the shooting incident, Jones saw Dr. Parsons again for what Jones characterized as marriage counseling "perhaps."  [Id., p. 12.] Jones testified that he saw Dr. Parsons in 1998 or 1999 for "a couple of visits."  [Id. at 13.]  Jones was unable to recall what types of marital difficulties he was having then but he did not believe his visits with Dr. Parsons concerned complaints that were being made about Jones arising out of his

---

[2] Prior to being employed by Valencia County, Jones worked for Lea County.

[3] Plaintiff argues that information obtained during the January 27, 2006 deposition cannot be considered "newly discovered evidence" for purposes of supporting the renewed motion because the deposition pre-dated the Court's earlier decision denying the motion to compel Rule 35 exam.  The Court is unpersuaded by Jones' argument.  Defendants' filed their reply before the January 27, 2006 deposition.  Thus, Defendants could not have provided the Court with the newly discovered evidence because briefing on the earlier motion was complete by the date of the deposition.

[4] This interrogatory that also asked about Jones' prior mental health care treatment, to the extent it existed, was served as part of a different lawsuit Jones filed against Lea County regarding his employment there. [Doc. No. 62, Ex. A, pp. 7-8.]

employment with the Lea County Sheriff's Office. [Id. at p.13.] The last time Jones saw Dr. Parsons was in 2000 before he was terminated by Lea County. Jones testified that he saw Dr. Parsons this time to "talk to him specifically about the issues with Lea County and my feelings of what was going on." [Id. at p. 14.]

Jones identified a general practitioner he saw during this same period of time. Part of the reason for his treatment with Dr. Bob Smith was for "depression." This diagnosis was at least serious enough that Dr. Smith prescribed Paxil, an anti-depressant medication. During his deposition, Jones testified that he saw Dr. Smith because he "was having acid reflux from anxiety and just generally depressed over what was going on. He tried to put me on a prescription for Paxil or something like that, and I don't take mind-altering drugs." [Id. at pp. 14-15.] Jones testified that he refused the prescription for Paxil and instead requested and tried acupuncture for his problems.

Jones' deposition testimony contradicts his prior response to Interrogatory No. 2 which implied Jones saw Dr. Parsons on one occasion for one reason. Clearly, Jones saw Dr. Parsons on a number of occasions, and at least one visit concerned problems with work at Lea County and Jones' perceptions of what was occurring in his workplace there. Moreover, at least some of the visits to the psychologist were voluntary on Jones' part, rather than mandatory under Lea County regulations. In addition, while Jones responded to the interrogatory by stating he never was prescribed any medications related to mental health care, he admitted in his deposition he was prescribed an anti-depressant even if he did not take the medicine. Finally, evidence was presented that at the same time Jones was involved in this employment dispute with Valencia County, he was also involved in litigation with Lea County over employment issues and was making claims for significant emotional injury, including depression. Jones' claims were ultimately settled for a substantial sum of money.

The Court concludes that Jones' answer to Interrogatory No. 2, an issue on which the Court relied on in its decision to deny the Rule 35 evaluation, was misleading and less than candid. [*See* Doc. No. 34, p. 3.]

Defendants also point out that in Jones' response to the earlier motion to compel, he argued that he had legitimate investigative reasons for surreptitiously making tape recordings of telephone calls. His explanation concerned good police work as part of his investigation into an alleged cover-up. He also explained that the recordings were made at the request of the FBI. For example, in Jones' response to the earlier motion, his attorney argued:

> [Jones] was previously requested by the FBI agents to conduct tape recording [sic] because of the concern that a criminal conspiracy to cover up and suppress prosecution of the original crime. [sic] The conspiracy has been alleged in the civil action, but has not been indicted as a criminal case at this point. Surreptitious recordings were made by Deputy Jones in investigating criminal and internal affairs matters within the Valencia County Sheriff's Department. The motion [to compel] falsely claims he violated Department policy in doing so, but he was authorized by the rule because of the nature of his investigations. The policy itself, . . . is based on the need for accurate and reliable evidence. That can hardly justify a legitimate inference that he is paranoid or has a personality disorder. Rather, it justifies the inescapable conclusion that he is, as the Undersheriff suggested, a world class detective.

[Doc. No. 34, pp. 5-6.] Indeed, the Court noted Jones' argument in its earlier opinion and Jones' position that there was nothing "paranoid" in his conduct but that the tape recordings were indicative of the thoroughness in which he performed his job as an internal affairs detective.

Jones' supplemental discovery responses, however, call into question his contentions that the recordings he made in this case were actually made as part of his investigation into a cover-up. Jones supplied a cassette tape purportedly memorializing a May 6, 1999 telephone conversation between

9

Jones and Detective Fred McMeekin of the Los Angeles Housing Authority Police that Jones taped surreptitiously. The transcript of the taped call was also provided with the renewed motion to compel. [Doc. No. 62, Ex. B.] This tape-recorded conversation preceded Jones' difficulties with both the Lea County Sheriff's Office and Valencia County. Therefore, it cannot be argued that Jones' decision to surreptitiously tape record a telephone conversation with an employee of a previous employer is part of his "world class detective" work, or that it could have turned up evidence of another alleged conspiracy, or that the FBI directed him to tape record that conversation.

To the contrary, this tape shows that well in advance of Jones' employment related difficulties either at Lea county or Valencia County, he was engaged in surreptitious recordings of others. This conduct fits into Dr. Roll's view that the surreptitious recordings are "indicative of potential psychological pathology" [Roll Declaration, p. 2, ¶ 19], and that the recordings demonstrate "deputy Jones has a tendency toward over incorporation," [someone] "who overreaches the available data in a grandiose or obsessive way." [Id., p. 3, ¶ 10.]

Defendants assert once again that this type of tape-recorded conversation or Jones' tendency to surreptitiously record telephone conversations show he is a paranoid individual who suffers from a personality disorder or other serious psychiatric deficit. Therefore, Defendants assert that the Rule 35 exam is justified.

Jones responds this time by stating that the "reasons why Plaintiff began tape recording conversations had no bearing on this Court's ruling." [Doc. No. 68, p. 4.] This is not accurate. In its earlier decision, the Court noted Plaintiff's arguments that he was surreptitiously tape recording conversations based on directives from the FBI. and because he believed he was authorized to do so. Jones argued that to make such tape recordings was essentially good investigative practice on his

10

part.  The Court does not imply that it believed Jones' assertions or that it reached the same "inescapable conclusion" that Jones did.  The Court simply did not find that Defendants had provided evidence of good cause sufficient to satisfy the Rule 35 requirements.

With the additional evidence supplied as part of Defendants' renewed motion to compel, the Court concludes that Defendants have demonstrated good cause sufficient to order a Rule 35 exam of Jones.  This is true because the new evidence shows that Jones did not thoroughly and candidly respond to a key interrogatory in this case.  Not only does Jones' failure to accurately respond to the interrogatory concern the Court, Jones' more complete deposition answers raise questions about whether he seeks only "garden-variety" emotional damages.  Indeed, "depression" is a specific, diagnosable condition that does not equate to "garden variety" emotional distress which is defined as no more than "generalized insult, hurt feelings and lingering resentment."  Thiessen v. General Electric Corp., 178 F.R.D. 568, 570 (D. Kan. 1998).

In addition, the evidence presented shows that Jones surreptitiously tape recorded telephone conversations for reasons other than his detective work and for reasons unrelated to uncovering a "conspiracy."

The Court already concluded that Defendants supplied sufficient evidence to show that Jones' mental condition is at issue.  That is even more true now in light of the new evidence.  In addition, based on the new evidence, the Court now finds Defendants have presented evidence sufficient to demonstrate good cause to order a Rule 35 examination of Jones.  The Court again has carefully weighed the benefits and detriments of Defendants' request and has considered the serious and invasive nature of Rule 35 examinations, along with Jones' privacy rights.  Notwithstanding the

Court's recognition that a Rule 35 exam can be used as a "blunt weapon," the Court concludes, in light of the new evidence, that a Rule 35 exam is warranted.

IT IS THEREFORE ORDERED that Defendants' renewed motion to compel Jones to submit to a Rule 35 exam is GRANTED and that the Rule 35 exam should be conducted as soon as practicable, but no later than 30 days after entry of this Order. Because of this ruling, the court extends all case management deadlines as follows:

| | |
|---|---|
| **Termination for discovery (limited to a deposition for Dr. Roll)** | **August 7, 2006** |
| **Defendants shall submit Dr. Roll's Rule 26 expert witness report by** | **July 10, 2006** |
| **Pretrial motions, other than discovery motions, resulting from the Rule 35 examination, shall be filed with the Court no later than** | **August 28, 2006** |
| **Pretrial Order:**  Plaintiff's portion to Defendants  Defendants' portion to the Court | **October 13, 2006**  **October 27, 2006** |

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge

12